# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**MARK F. GUIMOND and KALLIE A. GUIMOND, on behalf of themselves and others similarly situated,**

**Plaintiffs,**

**v.**

**TOYOTA MOTOR CREDIT CORPORATION,**

**Defendant.**

**C.A. No. 3:12-cv-00606-JAG**

## DEFENDANT TOYOTA MOTOR CREDIT CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

OF COUNSEL:

Christopher Loveland, admitted *pro hac vice*
SHEPPARD MULLIN RICHTER & HAMPTON LLP
1300 I Street, N.W., 11th Floor East
Washington, D.C. 20005-3314
Telephone (202) 469-4939
Facsimile (202) 218-0020
cloveland@sheppardmullin.com

Anna S. McLean, admitted *pro hac vice*
Lai L. Yip, admitted *pro hac vice*
SHEPPARD MULLIN RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone (415) 434-9100
Facsimile (415) 434-3947
amclean@sheppardmullin.com
lyip@sheppardmullin.com

Ryan Jennifer Rosner, VSB No. 82586
SHEPPARD MULLIN RICHTER & HAMPTON LLP
1300 I Street, N.W., 11th Floor East
Washington, D.C. 20005-3314
Tel. (202) 469-4939
Fax (202) 218-0020
rrosner@sheppardmullin.com

*Counsel for Defendant*
*Toyota Motor Credit Corporation*

Dated: October 26, 2012

SMRH:407160111.13

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................................1

II. BACKGROUND ...................................................................................................2

III. LEGAL STANDARD............................................................................................4

IV. ARGUMENT .........................................................................................................4

    A.  TMCC Complied With the ECOA.............................................................4

        1.  Denial of credit on the basis that the applicant froze his credit
            report is proper. ..........................................................................4

            a.  Plaintiffs fail to allege any "right" to freeze a credit report
                under the CCPA. ..........................................................5

            b.  The ECOA prohibits only retaliatory credit denials for
                bringing claims under the CCPA, and retaliation is not
                alleged. ..........................................................................7

            c.  Denial of access to a credit report relates to
                creditworthiness, which is a permissible basis for denial of
                credit under the ECOA...................................................8

        2.  TMCC's notice lawfully stated "access to credit report denied" as
            the reason for denying plaintiffs' credit application. ................................10

            a.  An address for requesting a statement of reasons was not
                required, because TMCC already provided the reasons in
                the adverse action notice.................................................11

            b.  TMCC stated the actual and principal reason for the denial.........11

            c.  Stating the reason "access to credit report denied" satisfies
                the purposes of the ECOA's notification requirement...................12

    B.  TMCC Complied With the VECOA.............................................................12

        1.  TMCC's notice complies with the VECOA, which mirrors the
            ECOA..........................................................................13

        2.  Compliance with the ECOA constitutes compliance with the
            VECOA, and the notice complies with the ECOA. ...................14

V.  CONCLUSION.......................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Andrew v. Clark*
    561 F.3d 261 (4th Cir. 2009) ................................................4

*Capitol Indem. Corp. v. Aulakh*
    313 F. 3d 200 (4th Cir. 2002) ..............................................14

*Edwards v. City of Goldsboro*
    178 F.3d 231 (4th Cir. 1999) ................................................4

*Harbeck v. Smith*
    814 F. Supp. 2d 608 (E.D. Va. 2011) .....................................4

*Lewis v. ACB Bus. Servs., Inc.*
    135 F.3d 389 (6th Cir. 1998) .........................................7, 8, 9

*Martin v. Q&A Enterprises, Inc.*
    No. 3:11CV654–HEH, 2012 WL 380065 (E.D. Va. Feb. 6, 2012).........................11

*Monroe v. City of Charlottesville, Va.*
    579 F.3d 380 (4th Cir. 2009) ................................................4

*Moore v. Wells Fargo Bank, N.A.*
    No. 3:10-CV-94, 2011 WL 652844 (E.D. Tenn. Feb. 14, 2011).............................7

*United States v. Hatcher*
    560 F.3d 222 (4th Cir. 2009) ................................................7

*Wright v. SunTrust Bank*
    No. 1:08cv568 (JCC), 2008 WL 3106884 (E.D. Va. Aug. 4, 2008) .................................8, 11

<u>Statutes</u>

15 United States Code
    §§ 1601-1693r...............................................................5
    § 1691(a) ................................................................4, 5
    § 1691(a)(3) .............................................................1, 4, 7
    § 1691(d).............................................................2, 10, 13
    § 1691(d)(2) ................................................................11
    § 1691(d)(2)(A).........................................................2, 11
    § 1691(d)(2)(B)............................................................11
    § 1691(d)(3) ................................................................11

Virginia Code
    § 6.2-503 ............................................................................................................2, 13
    § 6.2-503(A)(1) ........................................................................................................13
    § 6.2-503(A)(2) ........................................................................................................13
    § 6.2-503(B) .............................................................................................................13
    § 6.2-508 ..................................................................................................................14
    § 59.1-444.2(A) ..........................................................................................................6
    § 59.1-444.2(H) ..........................................................................................................6

Federal Regulations

12 Code of Federal Regulations
    § 202.1(b) ...................................................................................................................8
    § 202.2(f) ....................................................................................................................9
    Official Staff Interpretations, 12 C.F.R. pt. 202, Supp. I, para. 9(a)(1), cmt. 4.......................6
    Official Staff Interpretations, 12 C.F.R. pt. 202, Supp. I, para. 9(b)(2) cmts. 1 & 4 ..............11
    Part 202 ("Equal Credit Opportunity Act (Regulation B)")....................................................6

Federal Rules of Civil Procedure
    Rule 12(b)(6)..........................................................................................................1, 4

Other Authorities

122 Cong. Rec. S1912 (1976) (statement of Sen. Biden)................................................9

Bd. of Governors of the Fed. Reserve System, *Credit Reports and Credit Scores*
    http://www.federalreserve.gov/creditreports/ (last visited Oct. 25, 2012)...............................9

Equal Credit Opportunity Act Amendments & Consumer Leasing Act-1975, Hearing on
    S. 483, S. 1900, S. 1927, S. 1961, & H.R. 5616 Before S. Subcomm. on Consumer
    Affairs of the Comm. on Banking, Hous. & Urban Affairs, 94th Cong. 274 (statement
    of Forrest D. Jones on behalf of the Am. Bankers Assoc.) (1975) ............................................7

FTC, Facts for Consumers, Credit Freezes
    http://www.ftc.gov/bcp/edu/pubs/consumer/idtheft/idt05.shtm
    (last visited Oct. 25, 2012) ...............................................................................................5, 6

## I.      INTRODUCTION

Toyota Motor Credit Corporation ("TMCC") declined to extend credit to plaintiffs Mark F. and Kallie A. Guimond ("Mr. Guimond," "Mrs. Guimond," or collectively, "the Guimonds") after Mr. Guimond "froze" his Equifax credit report and TMCC notified them the reason for its denial of credit was "'access to credit report denied.'"  Class Action Complaint ("Complaint"), ¶¶ 5-7.  The Guimonds allege Mr. Guimond had a right under the Fair Credit Reporting Act ("FCRA") to freeze his credit report, and that denial of their credit application on that basis is prohibited by the Equal Credit Opportunity Act ("ECOA").  *Id.* ¶¶ 11, 21.  They also allege the stated reason for TMCC's denial— "access to credit report denied" —was inaccurate and insufficient, purportedly in violation of the ECOA and Virginia's Equal Credit Opportunities statute ("VECOA").  *Id.* ¶¶ 10, 21.  Finally, they claim TMCC was required to but did not provide an address from which plaintiffs could request a further statement of reasons for the denial.  *Id.* ¶1.  Plaintiffs purport to represent nationwide and Virginia classes of similarly situated persons, *id.*¶¶ 14, 15, but none of their claims states a plausible claim for relief.  The Complaint, therefore, should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").

Plaintiffs' claim under the ECOA, 15 U.S.C. § 1691(a)(3) and 1691(d), should be dismissed because TMCC's denial of credit on the basis "access to credit report denied" complies with the statute.  *First*, there is no "right" under the Consumer Credit Protection Act ("CCPA"), of which the FCRA is a part, to "freeze" a credit report, and therefore denial of credit on that basis cannot be a violation of ECOA.  *Second*, 15 U.S.C. § 1691(a)(3) of the ECOA prohibits *retaliatory credit denials* against an applicant for bringing a claim *against the creditor* under the CCPA.  Plaintiffs do not allege they exercised any right under the CCPA *against TMCC* prior to this Complaint, but rather against Equifax.  Finally, the ECOA was intended to

prohibit adverse credit actions *on bases unrelated to creditworthiness*.  Here, TMCC's ability to access an applicant's credit report has a direct bearing on its evaluation of creditworthiness.  TMCC's denial of credit was thus proper.

TMCC also complied with the ECOA's notice requirements under 15 U.S.C. § 1691(d).  The adverse action notice must include an address from which an applicant can request a statement of reasons *only if the notice does not already include such a statement*.  15 U.S.C. § 1691(d)(2)(A).  Here, plaintiffs allege TMCC included such a statement of reasons—"access to credit report denied."  Moreover, the statement "access to credit report denied" provides the *actual* and *principal* reason for the adverse action, as required by the ECOA, and plaintiffs do not allege otherwise.  Providing the reason "access to credit report denied" also satisfies the *purposes* of the ECOA's notice requirement—to discourage discriminatory practices by requiring disclosure of the reasons for adverse credit actions; to allow applicants to learn how their credit status is deficient; and to provide applicants with a chance to correct any misinformation provided to the creditor.

Plaintiffs' claim for violation of the VECOA, Virginia Code section 6.2-503, should likewise be dismissed.  The adverse action notice satisfies that statute, which mirrors the ECOA, 15 U.S.C. § 1691(d).  The VECOA also provides that compliance with the ECOA constitutes compliance with the VECOA, and TMCC complied with the ECOA.

Accordingly, as set forth in greater detail below, each count in plaintiffs' Complaint fails to state a claim upon which relief can be granted and should be dismissed.  Because the defects cannot be cured by amendment, dismissal should be granted with prejudice.

## II.    BACKGROUND

Plaintiffs allege that in January of 2011, they jointly applied for credit from TMCC to finance the purchase of a vehicle.  Compl. ¶ 6.  Earlier, after litigation against Equifax, Mr.

Guimond had purportedly "exercised his lawful option" under the FCRA to have Equifax take his credit report offline or "freeze" it. *Id.* ¶¶ 5, 11.  Plaintiffs allege that, on or about January 25, 2011, TMCC mailed them an adverse action notice denying their credit application. *Id.* ¶ 10. The notice purportedly disclosed the reason for denial as "access to credit report denied." *Id.*

Plaintiffs allege the statement of reasons for denial of their credit application in the notice was "incorrect" and "inadequate" because TMCC purportedly could have requested Mr. Guimond's Equifax credit report "manually" rather than by "automated means." *Id.* ¶¶ 5, 9. They also allege TMCC received Mrs. Guimond's credit reports and Mr. Guimond's Experian credit report. *Id.* ¶ 9.  They further allege TMCC's credit denial was impermissibly based on Mr. Guimond's exercise of his purported right under the FCRA to freeze his Equifax credit report. *Id.* ¶ 11. The notice also purportedly did not disclose the address at which they could request a further statement of reasons for the adverse action. *Id.* ¶ 1.

Plaintiffs allege two counts against TMCC: (1) violation of the ECOA, 15 U.S.C. § 1691(a)(3) by taking adverse action against them because they exercised a purported right under the FCRA and violation of the ECOA, 15 U.S.C. § 1691(d) for providing an inaccurate statement of reasons for such adverse action; and (2) violation of the VECOA, Virginia Code section 6.2-503, by providing a purportedly inaccurate statement of reasons for such adverse action. *Id.* ¶¶ 21, 24.  They seek to represent a putative nationwide class of all persons who applied for credit from TMCC in the preceding two years, to whom TMCC provided an adverse action notice subject to the ECOA where the stated basis for the adverse action was "'access to credit report denied.'" *Id.* ¶ 14.  Plaintiffs also seek to represent a putative class of all such persons who resided in Virginia at the time they applied for credit from TMCC. *Id.* ¶ 15.

## III.   LEGAL STANDARD

FRCP Rule 12(b)(6) authorizes a party to seek dismissal of an action for failure to state a claim upon which relief can be granted.  In evaluating a motion to dismiss, the Court generally will confine its review to the four corners of the complaint, and it must accept as true the plaintiff's factual allegations and draw all reasonable inferences in plaintiff's favor.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).  However, the court also must "determine whether it is plausible that the complaint's factual allegations are 'enough to raise a right to relief above the speculative level[.]'"  *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"In *Twombly*, the Supreme Court upheld a Rule 12(b)(6) dismissal because the complaint did not allege sufficient facts showing a claim was plausible rather than merely conceivable." *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 386 (4th Cir. 2009).  The "court 'need not accept the legal conclusions drawn from the facts, and [ ] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'"  *Monroe*, 579 F.3d at 385-86 (citation omitted); *accord, Harbeck v. Smith*, 814 F. Supp. 2d 608, 616 (E.D. Va. 2011).  Plaintiffs' Complaint fails to meet this standard.

## IV.   ARGUMENT

### A.   TMCC Complied With the ECOA

#### 1.   Denial of credit on the basis that the applicant froze his credit report is proper.

Plaintiffs contend Mark Guimond exercised his right under the FCRA to freeze his credit report and that TMCC violated 15 U.S.C. § 1691(a)(3) of the ECOA by denying the Guimonds' credit application on that basis.  Compl. ¶¶ 5, 11.  Title 15 U.S.C. § 1691(a) of the ECOA provides:

> It shall be unlawful for any creditor to *discriminate* against any applicant, with respect to any aspect of a credit transaction—
>
> (1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract);
>
> (2) because all or part of the applicant's income derives from any public assistance program; or
>
> (3) *because the applicant has in good faith exercised any right under this chapter.*[1]

(Emphasis added.) TMCC lawfully denied plaintiffs' credit application, because: (1) the FCRA does not confer a "right" to freeze a credit report; (2) in any event, the prohibition against adverse actions for "exercis[ing] any right" under the CCPA prohibits denial of credit only for *retaliatory* reasons, which are not alleged here; and (3) plaintiffs allege no adverse action on grounds *unrelated to creditworthiness*, which are the only such grounds precluded by the ECOA.

### a.   Plaintiffs fail to allege any "right" to freeze a credit report under the CCPA.

Although plaintiffs vaguely allege the FCRA confers on them the "right" to freeze a credit report (Compl. ¶ 11), the FCRA in fact provides no such right. Indeed, plaintiffs do not point to any specific FCRA provision they claim gives them the "right" to freeze a credit report. Nor does the Federal Trade Commission ("FTC"), in describing a "credit freeze," refer to any federal right to freeze a credit report. *See* FTC, Facts for Consumers, Credit Freezes, http://www.ftc.gov/bcp/edu/pubs/consumer/idtheft/idt05.shtm (last visited Oct. 25, 2012) (hereinafter "FTC Facts for Consumers"). Instead, the FTC explains that "[m]ost *states* have laws that allow consumers to place a credit freeze with consumer reporting companies." *Id.*

---

[1]   The "chapter" in which 15 U.S.C. § 1691(a) can be found is the CCPA, 15 U.S.C. §§ 1601-1693r.

(emphasis added).  However, such state rights do not arise "under this chapter"—the federal CCPA—and thus *ipso facto* cannot form the basis for a claimed ECOA violation.  *Id.*

Virginia, in fact, has such a statute.  *See* Va. Code § 59.1-444.2(A) ("consumer may request that a security freeze be placed on his or her credit report by sending a request in writing").  There may be consequences, however, for invoking that right, as Virginia law also confirms.  *Id.* § 59.1-444.2(H) ("If a third party requests access to a consumer credit report on which a security freeze is in effect, and this request is in connection with an application for credit or any other use, and the consumer does not allow his or her credit report to be accessed for that period of time, *the third party may treat the application as incomplete.*") (emphasis added). Indeed, the FTC warns that, while a consumer may choose to restrict access to his or her credit report by freezing it, "most creditors will need to view a credit file before opening a new account; if they can't see the file, *they may not extend the credit."*  FTC Facts for Consumers (emphasis added).

The Code of Federal Regulations, Title 12, Part 202 ("Equal Credit Opportunity Act (Regulation B)"), which was promulgated by the Board of Governors of the Federal Reserve System to implement the ECOA, likewise acknowledges that, where the "application is missing information but provides sufficient data for a credit decision," the creditor may deny the application so long as the applicant is "given the specific reasons for the credit denial."  Official Staff Interpretations, 12 C.F.R. pt. 202, Supp. I, para. 9(a)(1), cmt. 4.  Here, TMCC has "given the specific reasons for the credit denial," *i.e.*, "access to credit report denied," and thus properly denied plaintiffs' application.  There can be no claim of discrimination based on the exercise of a nonexistent federal right to "freeze" a consumer's credit report.

b.     **The ECOA prohibits only retaliatory credit denials for bringing claims under the CCPA, and retaliation is not alleged.**

Even if plaintiffs had alleged the exercise of a "right" cognizable under the CCPA, 15 U.S.C. § 1691(a)(3) only prohibits a creditor from denying credit in *retaliation* against that applicant for bringing a claim *against the creditor* for violation of such a right.  As the Sixth Circuit has stated, 15 U.S.C. § 1691(a)(3) was:

> "intended to bar retaliatory credit denials or terminations against applicants who exercise their rights under any part of the Consumer Credit Protection Act . . . ."

*Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 406 (6th Cir. 1998) (quoting ECOA Amendments of 1976, Pub. L. No. 94-239, 1976 U.S.C.C.A.N. 403, 407); *see Moore v. Wells Fargo Bank, N.A.*, No. 3:10-CV-94, 2011 WL 652844, at *15 (E.D. Tenn. Feb. 14, 2011) (section 1691(a)(3) only prohibits "retaliatory credit denials," not denial based on exercise of right to request appraisal) (citations and internal quotations omitted).  The legislative history clarifies that 15 U.S.C. § 1691(a)(3):

> contemplates prohibiting a retaliatory credit denial or termination following an applicant's effort to avail himself of his legal rights **against a creditor**.

ECOA Amendments & Consumer Leasing Act-1975, Hearing on S. 483, S. 1900, S. 1927, S. 1961, & H.R. 5616 Before S. Subcomm. on Consumer Affairs of the Comm. on Banking, Hous. & Urban Affairs, 94th Cong. 274 (statement of Forrest D. Jones on behalf of the Am. Bankers Assoc.) (1975) (attached as Exh. 1 to Request for Judicial Notice ("RJN")) (emphasis added).[2]

---

[2]     The Court may consider legislative history here because plaintiffs' interpretation of the statute "'produces an outcome that is demonstrably at odds with clearly expressed congressional intent to the contrary.'"  *United States v. Hatcher*, 560 F.3d 222, 226 (4th Cir. 2009) (citation omitted).  Plaintiffs assert 15 U.S.C. § 1691(a)(3) prohibits a creditor from declining a credit application as a result of the applicant's exercise of any right as to a third party, when Congress intended the provision to apply only when such a right has been exercised under the CCPA *against the creditor*.

Plaintiffs do not allege they sued TMCC, brought a claim against TMCC, or otherwise availed themselves of legal rights against TMCC before their credit application was denied.  Nor do they allege any facts supporting the theory that TMCC's denial of their credit application was a "retaliatory" action for freezing their credit report with Equifax.[3]  Their ECOA claim fails for this reason as well.

> c. **Denial of access to a credit report relates to creditworthiness, which is a permissible basis for denial of credit under the ECOA.**

The purpose of the ECOA is to "promote the availability of credit to all *creditworthy* applicants."  12 C.F.R. § 202.1(b) (emphasis added).  "The Act was only intended to prohibit credit determinations based on 'characteristics ***unrelated*** to creditworthiness.'"  *Lewis*, 135 F.3d at 406 (quoting ECOA Amendments of 1976, Pub. L. No. 94-239, 1976 U.S.C.C.A.N. 403, 404-05) (emphasis added); *see also Wright v. SunTrust Bank*, No. 1:08cv568 (JCC), 2008 WL 3106884, at *3 (E.D. Va. Aug. 4, 2008) (granting motion to dismiss where plaintiff failed to allege creditor's denial of credit application was "'based on factors other than Plaintiff's creditworthiness'") (citation omitted).  Congress made clear the ECOA prohibits adverse actions on the basis of "characteristics of applicants which are, and must be, *irrelevant to a credit judgment*," but "balances the need for protection against discrimination and the creditors' need for sufficient information to make informed judgments and avoid unsound practices."  122 Cong. Rec. S1912 (1976) (statement of Sen. Biden) (RJN, Exh. 2) (emphasis added).

---

[3]  While plaintiffs allege that Mr. Guimond sued Equifax as a result of errors on his credit report, Compl. ¶ 5, this was not an action against the creditor, TMCC.  In any event, plaintiffs do not allege TMCC's denial of credit was in retaliation for their Equifax lawsuit.

Plaintiffs allege TMCC was denied access to Mr. Guimond's credit report because of a security freeze, which *is* relevant to the credit judgment and *does* bear on plaintiffs' creditworthiness.  A "*complete*[ ]" application is defined as one in which:

> a creditor has received *all* the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested (*including, but not limited to, credit reports*, any additional information requested from the applicant, and any approvals or reports by governmental agencies or other persons that are necessary to guarantee, insure, or provide security for the credit or collateral).

12 C.F.R. § 202.2(f) (second emphasis added).  Even if, as plaintiffs allege, TMCC received Mrs. Guimond's reports and Mr. Guimond's Experian credit report, "the information in one credit bureau's report may not be the same as the information in another credit bureau's report," as "[e]ach credit bureau gets its information from different sources."  Bd. of Governors of the Fed. Reserve System, *Credit Reports and Credit Scores*, http://www.federalreserve.gov/creditreports/ (last visited Oct. 25, 2012).

Thus, having been denied access to Mr. Guimond's credit report, TMCC treated plaintiffs' application as not "complete" and denied it.  Congress could not have intended, and it would make no sense, to force a creditor to extend credit to an applicant who elects to deny that creditor access to his credit report.[4]

---

[4]     The ECOA was originally intended, after all, to protect applicants from being discriminated against by creditors on the basis of their membership in a particular group—*e.g.*, on the basis of sex, marital status, age, race, or religion.  "It was never intended to eliminate a 'creditor's right to make a rational decision about an applicant's credit worthiness.'" *Lewis*, 135 F.3d at 406 (quoting ECOA Amendments of 1976, Pub. L. No. 94-239, 1976 U.S.C.C.A.N. 403, 404-05).

### 2. TMCC's notice lawfully stated "access to credit report denied" as the reason for denying plaintiffs' credit application.

Plaintiffs allege that although TMCC was denied access to Mr. Guimond's Equifax credit report, it subsequently received his Experian credit report. Compl. ¶¶ 7-9. Therefore, according to plaintiffs, stating "access to credit report denied" in the notice as the reason for the adverse action was inaccurate, in violation of 15 U.S.C. 1691(d). Compl. ¶¶ 10, 21. They also allege TMCC violated 15 U.S.C. § 1691(d) because the notice did not disclose an address at which plaintiffs could request a statement of reasons for the adverse action. *Id.* ¶ 1. Title 15 U.S.C. § 1691(d) provides in relevant part:

> (2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by—
>
> > (A) *providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken*; *or*
> >
> > (B) giving written notification of adverse action which discloses
> >
> > > (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and
> > >
> > > (ii) the identity of the person or office from which such statement may be obtained.

(emphasis added). Here, TMCC complied with 15 U.S.C. § 1691(d) by providing the statement of reasons in the adverse action notice and therefore did not need to provide an address; "access to credit report denied" is the actual and principal reason for the adverse action, as required by the ECOA; and providing the reason "access to credit report denied" satisfies the purposes of the ECOA's notice requirement.

     **a.**     **An address for requesting a statement of reasons was not required, because TMCC already provided the reasons in the adverse action notice.**

Title 15 U.S.C. § 1691(d)(2) requires a creditor to "(A) provid[e] statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; *or* (B) giv[e] written notification of adverse action which discloses [among other things] the identity of the person or office from which such statement may be obtained."  The conjunctive "or" between 15 U.S.C. § 1691(d)(2)(A) and (B) makes clear that the creditor *need not do both*.  TMCC provided plaintiffs with a statement of reasons for denying their credit application, pursuant to 15 U.S.C. § 1691(d)(2)(A), and was therefore not obligated also to provide an address at which plaintiffs could request a statement of reasons pursuant to subsection (B).

     **b.**     **TMCC stated the actual and principal reason for the denial.**

Even if TMCC did, as plaintiffs allege, subsequently obtain a credit report from another credit agency—and plaintiffs allege no facts in support of this bare assertion—TMCC was not required to state anything more than "access to credit report denied" in the adverse action notice.  15 U.S.C. § 1691(d)(3) provides that the statement of reasons is sufficient "if it contains the specific reasons for the adverse action taken."  This means the notice is required to "indicate the *principal* reason(s) for the adverse action" and the "*actual* reasons for denial."  Official Staff Interpretations, 12 C.F.R. pt. 202, Supp. I, para. 9(b)(2) cmts. 1 & 4, Supp. I, Paragraph 9(b)(2).4 (emphasis added).  Furthermore, the "notification need not be extensive."  *Martin v. Q&A Enters., Inc.*, No. 3:11CV654–HEH, 2012 WL 380065, at *4 (E.D. Va. Feb. 6, 2012); *see also Wright*, 2008 WL 3106884, at *2 (notice "'need not describe how or why a factor adversely affected an applicant'") (citation omitted).

Plaintiffs never allege that "access to credit report denied" was not the actual or principal reason for the adverse action; nor do they contend that it was not the deficiency that *caused*

TMCC to deny their application.  TMCC is not required to disclose what other information it might have received, only that which caused it to deny the application for credit—which it did in full compliance with the statute.

      **c.**      **Stating the reason "access to credit report denied" satisfies the purposes of the ECOA's notification requirement.**

As this Court has earlier determined, the ECOA's notification requirement has three purposes:

> First, Congress intended for it to serve as "a strong and necessary adjunct to the antidiscrimination purpose" of the statute, "for only if creditors know they must explain their decisions will they effectively be discouraged from discriminatory practices." In addition, the explanation required under the Act provides applicants with a "valuable educational benefit," because it allows them "to learn where and how their credit status is deficient." And in instances where a creditor's actions may have been premised on misinformation, "the statement of reasons gives the applicant a chance to rectify the mistake."

*Martin*, 2012 WL 380065, at *4 n.2 (citations omitted).  TMCC's notice stating "access to credit report denied" as the reason for the adverse action satisfies all three purposes.   By having to provide a non-discriminatory reason for denying plaintiffs' credit application—*i.e.*, "access to credit report denied"—TMCC is discouraged from potentially discriminatory practices.  Plaintiffs received the "valuable educational benefit" of learning that denying a potential creditor access to a credit report was a deficiency that could lead to the denial of credit.  And it gave plaintiffs a chance to "rectify the mistake" of denying access if they wanted to apply for credit.

**B.**      **TMCC Complied With the VECOA**

Next, plaintiffs allege TMCC violated the VECOA, Virginia Code section 6.2-503 by "failing to provide notice containing an understandable, complete and accurate statement of reasons for such adverse action" and by failing to "disclose the accurate address at which consumers can request a statement of reasons for adverse actions."  Compl. ¶¶ 24, 1.  Plaintiffs

are wrong.  The adverse action notice complies with the VECOA and, moreover, the notice is compliant with the ECOA, which constitutes compliance with the VECOA.

### 1. TMCC's notice complies with the VECOA, which mirrors the ECOA.

The VECOA, Virginia Code section 6.2-503, mirrors the ECOA, 15 U.S.C. § 1691(d), providing in relevant part:

> A. Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for the action on the application from the creditor. A creditor shall satisfy this obligation by:
>
> > 1. Providing statement of reasons in writing as a matter of course to applicants against whom adverse action is taken; or
> >
> > 2. Giving written notification of adverse action that discloses (i) the applicant's right to a statement of reasons within 30 days after receipt by the creditor of a request made within 60 days after such notification and (ii) the identity of the person or office from which such statement may be obtained. The statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request.
>
> B. A statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken.

TMCC provided plaintiffs written notice containing a statement of reasons for the denial of their credit application, pursuant to Virginia Code section 6.2-503(A)(1), and therefore was not required to provide an address from which they could request the same thing, pursuant to Virginia. Code section 6.2-503(A)(2).  The notice contained the "specific reasons for the adverse action taken," *i.e.*, "access to credit report denied," pursuant to Virginia Code section 6.2-503(B). Plaintiffs do not allege that denial of access to their credit report was *not* the specific reason for the adverse action.

### 2. Compliance with the ECOA constitutes compliance with the VECOA, and the notice complies with the ECOA.

The VECOA, Virginia Code section 6.2-508, provides, "[c]ompliance with the federal Equal Credit Opportunity Act, (15 U.S.C. § 1691 et seq.), as amended, and regulations issued by the Federal Reserve Board thereunder, ***constitutes compliance with this chapter***" (emphasis added).  *See generally Capitol Indem. Corp. v. Aulakh*, 313 F. 3d 200, 201 (4th Cir. 2002) (referring to VECOA as "analogue" of ECOA).  As demonstrated above, TMCC's notice complies with the ECOA and therefore also complies with the VECOA.

## V. CONCLUSION

For the reasons set forth above, defendant TMCC respectfully requests that the Court dismiss the Complaint in its entirety, with prejudice and without leave to amend.  TMCC also respectfully requests that the Court set a hearing on this motion at the same time as the November 27, 2012 pre-trial conference in this case.

Respectfully submitted:

    /s/ *Ryan Jennifer Rosner*
Ryan Jennifer Rosner, VSB No. 82586
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
1300 I Street, N.W., 11th Floor East
Washington, D.C. 20005-3314
Tel. (202) 469-4939
Fax (202) 218-0020
rrosner@sheppardmullin.com

*Counsel for Defendant*
*Toyota Motor Credit Corporation*

Dated: October 26, 2012

OF COUNSEL:

Christopher Loveland, admitted *pro hac vice*
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
1300 I Street, N.W., 11th Floor East
Washington, D.C. 20005-3314
Telephone (202) 469-4939
Facsimile (202) 218-0020
cloveland@sheppardmullin.com

Anna S. McLean, admitted *pro hac vice*
Lai L. Yip, admitted *pro hac vice*
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone (415) 434-9100
Facsimile (415) 434-3947
amclean@sheppardmullin.com
lyip@sheppardmullin.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of October, 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Leonard Anthony Bennett
Consumer Litigation Associates
763 J Clyde Morris Boulevard
Suite 1 A
Newport News, VA 23601
Phone: 757-930-3660
Fax: 757-930-3662
Email: lenbennett@cox.net

Thomas Ray Breeden
Thomas R. Breeden PC
10326 Lomond Drive
Manassas, VA 20109
Phone: 703-361-9277
Fax: 703-257-2259
Email: trb@tbreedenlaw.com

Susan Mary Rotkis
Consumer Litigation Associates
763 J Clyde Morris Boulevard
Suite 1 A
Newport News, VA 23601
Phone: 757-930-3660
Fax: 757-930-3662
Email: srotkis@clalegal.com

*Counsel for Plaintiffs*
*Mark F. Guimond and Kallie A. Guimond*

Respectfully submitted:

    */s/ Ryan Jennifer Rosner*
Ryan Jennifer Rosner, VSB No. 82586
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
1300 I Street, N.W., 11th Floor East
Washington, D.C. 20005-3314
Tel. (202) 469-4939

Fax (202) 218-0020
rrosner@sheppardmullin.com

*Counsel for Defendant*
*Toyota Motor Credit Corporation*

Dated: October 26, 2012