UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

MARK F. GUIMOND,
KALLIE A. GUIMOND,
*on their own behalf and*
*on behalf of all others similarly situated*,

              **Plaintiffs,**

v.                                          CIVIL NO. 3:12-cv-00606-JAG

**TOYOTA MOTOR CREDIT CORPORATION,**

              **Defendant.**

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

COME NOW the Plaintiffs, by counsel, and for their Memorandum in Opposition to Defendant's Motion to Dismiss, they state as follows:

### INTRODUCTION

Defendant attempts to manufacture a procedural challenge to Plaintiffs' Complaint based almost entirely on its insistence that the Plaintiffs must allege facts necessary to consider nearly every permutation of reality that Defendant can contemplate. It does not argue, in general, that the Complaint fails to allege *prima facie* elements of the Equal Credit Opportunity Act ("ECOA") claim pursuant to 15 U.S.C. § 1691(d). Instead, it demands a heightened threshold well beyond Rule 8(b) or the unremarkable pleading thresholds suggested by *Twombley* and *Iqbal*. Because Plaintiffs facially allege a plausible claim against Toyota Motor Credit Corporation (TMCC), Defendant's Rule 12(b)(6) Motion must be denied.

### ALLEGATIONS IN THE AMENDED COMPLAINT

The Plaintiffs filed a detailed complaint that states a claim entitling them to relief.

Defendant does not contest Plaintiffs' allegations that they are "consumers" (Am. Compl. ¶ 3) and Defendant a "creditor" (Am. Compl. ¶ 4) governed by the ECOA and Virginia Equal Credit Opportunity Act ("VECOA"), Virginia Code §6.2-500, *et seq*. [1] The Guimonds jointly applied for credit (Am. Compl. ¶ 6), and TMCC took an "adverse action" upon such application (Am. Compl. ¶ 9).

Plaintiffs' allegations in matters now challenged by TMCC are equally clear:

1. When TMCC received Plaintiffs' application for credit, it requested and received Mrs. Guimond's credit report from both Equifax and Experian. (Am. Compl. ¶ 7).

2. When TMCC received Plaintiffs' application for credit, it requested and received Mr. Guimond's Experian credit report. (Am. Compl. ¶ 8).

3. When TMCC received Plaintiffs' application for credit, it requested Mr. Guimond's Equifax credit report only "through its automated process." (Am. Compl. ¶ 8).

4. Had a live human being at TMCC requested Mr. Guimond's Equifax credit report "manually," it would have been provided. (Am. Compl. ¶ 8). When Defendant attempted to electronically access Mr. Guimond's Equifax report, it received – solely for Mr. Guimond's Equifax report – a message that it could access his report by manually contacting and telephoning Equifax. (Am. Compl. ¶ 20).

5. Defendant did not exercise the option to access Mr. Guimond's Equifax report manually. (Am. Compl. ¶¶ 8, 20).

6. On January 25, 2011, Defendant mailed to both Mr. Guimond and Mrs. Guimond a "adverse action" notice stating as its sole explanation for the denial, "access to credit report denied." (Am. Compl. ¶¶ 9, 15). *See* Letter from TMCC to Guimonds dated 1/25/2011, attached

---

[1] Both Parties agree that as goes the ECOA claim, so goes the VECOA claim. *See* Def. Mem. at 13.

2

as Ex. 2 to Decl. of Gloria Ham; and, "Template of the Adverse Action Notice" attached as Ex. 1 to Decl. of Gloria Ham. (Doc. No. 31).

7. On its face, the ECOA adverse action notice fails to comply with 15 C.F.R. §202.9(a), it does not include the required disclosures in Regulation B such as the antidiscrimination purpose of the letter, the agency with compliance authority. (Am. Compl. ¶¶ 9, 16).

## STANDARD OF REVIEW

In order for the Defendant to prevail in its motion, it must demonstrate that the Plaintiffs have supplied no facts which, taken as true, facially state a plausible claim for relief. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554-55 (2007). While Fed. R. Civ. P. 8(a)(2) simply requires a "short and plain statement of the claim showing that the pleader is entitled to relief," the statement must contain "'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Ashcroft v. Iqbal,* 556 U.S. 562, 578 (2009)(quoting *Twombly,* 550 U.S. at 555)(internal citation omitted). In order to determine whether the Defendant prevails, it must overcome the considerable hurdle in "the familiar standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Sumner v. Tucker,* 9 F.Supp.2d 641, 642 (E.D.Va.1998). The Rule requires that the facts alleged by the Plaintiff are presumed to be true and the complaint should be dismissed only when "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *White v. Jones*, No. 1:10CV799, 2010 WL 3395695, at *2 (E.D. Va. Aug. 23, 2010) *aff'd,* No. 10-7283, 2010 WL 5439712 (4th Cir. Dec. 29, 2010)(quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)). In an effort to prevent complaints from moving forward merely by setting forth legal conclusions or the bald elements of claims, the Supreme Court has clarified the survival standard for claims: they must actually be

supported by factual allegations contained in the complaint. *Id.* Rather than altering the pleading standard in Rule 8, the Court held that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 578 (quoting *Twombly,* 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. The Court expressly rejected a heightened pleading standard and explained that it was not requiring a particularized complaint, just one that alleged facts which would entitle the Plaintiff to relief. *Twombley,* 550 U.S. at 1973 & n.14*; accord Erickson v. Pardus,* 551 U.S. 89, 93 (2007) and *Iqbal,* 556 U.S. at 578. Plaintiffs have alleged more than the facts necessary to state a claim for relief under 15 U.S.C.§1691(d).

Under Rule 12(b)(6), the Defendant is bound by the factual allegations of the Complaint. Instead of filing its Answer, it moved to dismiss. Instead of applying the Rule 12(b)(6) standard, Defendant supplies its own facts and argues its defenses in contravention of *Iqbal,* 556 U.S. at 578. The Court must accept all well-pled facts as true, and construe the facts in the light most favorable to the Plaintiff where the Defendant is challenging the legal sufficiency of the Complaint. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Dismissals are disfavored. *Fayetteville Invs. v. Comm'n Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991).

In this case, the Defendant hasn't attacked the sufficiency of the Amended Complaint, but has expressly moved to dismiss on its version of the facts, failed to accurately defer to the

4

allegations contained in the Complaint, and argued non-existent elements it believes are missing from Plaintiff's *prima facie* ECOA and VECOA claims.

## ARGUMENT

For purposes of this motion, the Defendant does not dispute that (1) the Guimonds are consumers that applied for credit, (2) that TMCC is a creditor that denied the loan and (3) that an adverse action notice was sent. The sole issue raised by Defendant's motion is whether or not TMCC has violated the ECOA by failing to provide a *specific and accurate* notice of the reasons for the adverse action taken on her credit application. The ECOA requires that the creditor provide not only a *technically truthful* notice, but also one that *accurately and specifically* reflects the reasons for the adverse action.

The first step in analyzing whether the Plaintiffs have set forth facts that state a *prima facie* case under the ECOA is to look to the plain language of the statute itself. *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997). The Amended Complaint is based on TMCC's failure to provide an adequate adverse action notice in violation of §1691(d) of the ECOA, which provides:

> (d)(1) Within thirty days (or such longer reasonable time as specified in regulations of the Board for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application. (2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by-- (A) providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or (B) giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the persons or office from which such statement may be obtained. Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request.

The statute is clear on its face. To prevail on ECOA claim under §1691(d), the Plaintiffs must prove the following elements: (1) TMCC is a creditor, (2) Plaintiffs are loan applicants, (3)

5

TMCC took adverse action with respect to Plaintiffs' credit application, and (4) TMCC failed to provide Plaintiffs with an ECOA-compliant statement of reasons for its adverse action. *Stoyanovich v. Fine Art Capital, LLC,* No. 06 Civ. 13158, 2007 WL 2363656, at *2 (S.D.N.Y. Aug. 17, 2007) (citing *Madrigal v. Kline Oldsmobile, Inc.*, 423 F.3d 819, 822 (8th Cir.2005)); *accord Diaz v. Va. Hous. Dev. Auth.*, 117 F.Supp.2d 500, 504 (E.D. Va. 2000)(explaining that there is no Fourth Circuit authority directly on point, thus the analysis begins with the plain language of the statute, citing 15 U.S.C. §1691(d)(1)-(3); Va. Code Ann. § 59.1-21.21:1(d)(1)-(3); *see* 12 C.F.R. § 202.9(a)(1)-(2)).

In this case, the Plaintiffs have alleged each element with supporting facts, the first three of which TMCC does not dispute. In fact, the only element that TMCC even disputes and moves to dismiss upon is its version of the fourth element – whether its adverse action notice was lawfully sufficient under the ECOA and VECOA. The Plaintiff alleges facts that demonstrate TMCC's adverse action notice was illegal under the statutes. TMCC argues that its notice meets the legal requirements set forth in Regulation B. This question cannot be resolved on a motion to dismiss.

    **A.**    **A Creditor must Provide the Specific and Accurate Basis for its Adverse Action.**

The ECOA was enacted in 1974 and amended in 1976. The ECOA thereafter imposes a 'notice' requirement to ensure that creditors provide sufficient – accurate and specific – information to consumers who may be the subject of a credit denial. 15 U.S.C. § 1691(d)(1). [2]

---

[2] As TMCC correctly points out, it was not required to provide an address to obtain a statement of reasons if it had properly done so in its notice. Def.'s Mem. at 10. Yet, Defendant concedes that this alternate means of compliance is inapplicable and bases its sole defense on the specificity and accuracy of its statement of reasons.

6

*See also*, Regulation B, 12 C.F.R. § 202.9(a)(1). The ECOA notice requirement was perhaps the most significant of the 1976 amendments, and was designed to fulfill the twin goals of consumer protection and education.[3] *See Fischl v. Gen'l Motors Acceptance Corp.*, 708 F.2d 143, 146 (5th Cir. 1983). The notice provision is a prophylactic requirement with multiple purposes and effects, not only to prevent and identify discrimination but also to inform consumers about their credit status. *Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 977-78 (7th Cir. 2004). The Senate report for the ECOA amendments explained a strict notice provision was

---

[3] While the ECOA was certainly enacted in largest part to combat credit discrimination, there is no requirement to plead or show discrimination or discriminatory intent in order for a plaintiff to prevail on an adverse action notice claim. *Diaz*, 117 F.Supp.2d at 503 (adverse action notice requirement is key to prevention of discrimination); *Treadway*, 362 F.3d at 977 (holding that "the notice requirement serves two purposes: it discourages discrimination and it educates consumers as to the deficiencies in their credit status."); *Polis v. Am. Liberty Fin. Inc.*, 237 F.Supp.2d 681, 688 (S.D.W.Va. 2002)(explaining the statute is clear that there is no requirement that a plaintiff be a member of a protected class in order to state a claim under 15 U.S.C. § 1691(d)); *accord Rayburn v. Car Credit Center Corp.*, No. 00 C 3361, 2000 WL 1508238, at *4 (N.D. Ill. Oct. 10, 2000)(reasoning that while the ECOA addresses discriminatory lending, section 1691(d) "sets forth a notification requirement separate and apart from the statute's discrimination provisions"); *Pinkett v. Payday Today Loans, LLC*, No. 99 C 3332, 1999 WL 592189, at *1 (N.D. Ill. Aug. 3 1999) (the plain language of the statute as written does not require allegations of discrimination); *Williams v. MBNA Am. Bank, N.A.*, 538 F.Supp.2d at 1018(holding that no allegation of discrimination is necessary to state a claim under §1691(d) as long as the Plaintiff alleged that the creditor failed to provide notice); *Jochum v. Pico Credit Corp. of Westbank*, 730 F.2d 1041, 1043 n. 3 (5th Cir. 1984)(deeply analyzing the adverse action notice history, purpose and requirements, noting that the notification provisions are separate and independent of the discrimination provisions of the Act); *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F.Supp.2d 519, 532 n. 22 (E.D.N.Y. 2006); *Costa v. Mauro Chevrolet, Inc.*, 390 F.Supp.2d 720, 728 (N.D. Ill. 2005); *Stoyanovich*, 2007 WL 2363656, at *5(holding "the ECOA's notice provisions apply to all applicants" not merely applicants who allege discrimination). Where the legislature has included the element of discrimination in other sections of the statute and specifically not made it an element of §1691(d), it is proper to apply the axiom *expressio unius est exclusio alterius*. *Diaz*, 117 F.Supp. at 504 (quoting *Bates v. United States*, 522 U.S. 23, 30 (1997)).

> a strong and necessary adjunct to the antidiscrimination purpose of the legislation, for only if creditors know they must explain their decisions will they effectively be discouraged from discriminatory practices. Yet this requirement fulfills a broader need: rejected credit applicants will now be able to learn where and how their credit status is deficient and this information should have a pervasive and valuable educational benefit. Instead of being told only that they do not meet a particular creditor's standards, consumers particularly should benefit from knowing, for example, that the reason for the denial is their short residence in the area, or their recent change of employment, or their already over-extended financial situation. In those cases where the creditor may have acted on misinformation or inadequate information, the statement of reasons gives the applicant a chance to rectify the mistake.

S. Rep. No. 94-589, 94th Cong., 2d Sess., reprinted in 1976 U.S.C. Cong. & Admin. News, 403, 406, n. 3.

These goals are consistent throughout the Consumer Credit Protection Act ("CCPA")[4] that recognize the importance of the unimpeded flow and availability of accurate information in a free and open market economy and financial system. *See e.g., Till v. SCS Credit Corp.*, 541 U.S. 465, 480 (2004) (explaining that "Congress enacted the Truth in Lending Act in part because it believed consumers would individually benefit not only from the more informed use of credit, but also from heightened competition which would result from more knowledgeable credit shopping." (internal quotations, citation, and footnote omitted)). Informed credit shopping facilitates the proper functioning of our free economic system. *Mourning v. Family Pubs. Serv., Inc.*, 411 U.S. 356, 363-65 (1973) (regarding the TILA but equally applicable to the ECOA and the other statutes in the CCPA).

The ECOA notice requirements are not "particularly arduous." *Treadway*, 362 F.3d at 975, n. 2. The Federal Reserve Board has promulgated sample notices which creditors may use as presented, or as modified to suit their needs. 12 C.F.R. § 202, App. C; 68 F.R. 13144, 13184

---

[4] The CCPA is codified beginning at 15 U.S.C. § 1600, et seq and includes the familiar Truth in Lending Act, ("TILA"), 15 U.S.C. § 1600, et seq, the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., amongst others

(March 18, 2003). "These short forms essentially require that the creditor (1) describe the type of credit which the application requested as well as the adverse action taken, and (2) check off the creditor's principal reasons for taking the adverse action from amongst a pre-printed list." *Treadway*, 362 F.3d at 975 n. 2. The regulations specify that the creditor may not provide any arbitrary reason that may have applied. Rather, the ECOA requires that creditors who take an adverse action notice must supply the consumer with the *specific* reasons for the credit denial.

> (2) Content of notification when adverse action is taken. A notification given to an applicant when adverse action is taken shall be in writing and shall contain a statement of the action taken; the name and address of the creditor; a statement of the provisions of Sec. 701(a) of the Act; the name and address of the federal agency that administers compliance with respect to the creditor; and either:   (i) A statement of specific reasons for the action taken; or (ii) A disclosure of the applicant's right to a statement of specific reasons within 30 days, if the statement is requested within 60 days of the creditor's notification. . . .

12 C.F.R. § 202.9(a)(2). See 15 U.S.C. § 1691(d)(3) ("A statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken.") A creditor must provide more than general statements about the reasons for the adverse action. Pursuant to Regulation B, 12 C.F.R. § 202.9(b)(2),

> (2) Statement of specific reasons. The statement of reasons for adverse action required by paragraph (a)(2)(i) of this section must be specific and indicate the *principal reason(s)* for the adverse action. Statements that the adverse action was based on the creditor's internal standards or policies or that the applicant, joint applicant, or similar party failed to achieve a qualifying score on the creditor's credit scoring system are insufficient.

*Id.* (emphasis added). Consequently, a statement of reasons that are not the actual, specific, and principal reasons for the denial is legally insufficient for purposes of the ECOA and Regulation B.

Likewise, the official staff commentary to this rule requires that the creditor provide the specific reasons for the decision.

9

1. Number of specific reasons.  A creditor must disclose the principal reasons for denying an application or taking other adverse action.  The regulation does not mandate that a specific number of reasons be disclosed, but disclosures of more than four reasons in not likely to be helpful to the applicant.

Official Staff Commentary to Regulation B, 12 C.F.R. Part 202, Supp. I, Paragraph (9)(b)(1). Like other consumer protection statutes, the relevant substance is "truth" and all notices must be truthful as to the facts that they express. *Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 146 (5th Cir. 1983) (finding notice was "manifestly inappropriate" because it stated denial was based on insufficient credit references when the real reason was the brevity of the history)(citing *Carroll v. Exxon Co.*, 434 F. Supp. 557, (E.D. La. 1977) for the principle that the ECOA is violated where a creditor gave only one reason when in fact four other reasons were used); *see also*, *Adams v. Plaza Finance*, 168 F.3d 932, 936 (7th Cir. 1999) (regarding the Truth in Lending Act but equally applicable to the ECOA).

    B. **"Access to credit report denied" was not Specific, Clear or Truthful.**

    1. **The Amended Complaint Plausibly Alleges that TMCC's Notice was Inaccurate.**

The simplest basis to deny Defendant's motion is that it is premised upon a dispute of the facts alleged in the Amended Complaint.  Plaintiffs allege – in detail – that TMCC's denial was not singularly, if at all, based on the fact that its access to Plaintiffs' credit report was denied.  At this posture certainly, Defendant's dispute of those alleged facts is an improper basis for such a Rule 12(b)(6) challenge. Defendant asks the court to believe its version of the facts despite Plaintiffs extensive and fact-specific allegations that TMCC's notice "states obvious falsehoods" and was "false because access to the applicants' credit reports was not denied."  Am. Compl. ¶ 17, and "the reason supplied by the Defendant in this case was a false." Am. Compl. ¶ 18. "In

fact, *access* to Plaintiffs' credit reports was not denied. Defendant did access Plaintiffs' credit reports[.]" Am. Compl. ¶ 19. "Defendant's statement of the reason(s) "access to credit report denied" for its adverse action was … untrue[.]" Am. Compl. ¶ 21. The adverse action notice that Defendant mailed to the Plaintiffs "failed to lawfully and truthfully inform the Plaintiffs of the basis or statement of the specific reason(s) for the Defendant's adverse action." Am. Compl. ¶ 22.

While at a Rule 12(b)(6) posture, these allegations alone are sufficient. Discovery has only just started and the Defendant has yet to identify or produce a deponent in response to Plaintiffs' request. The Defendant has objected to Plaintiffs' written discovery, therefore Plaintiffs cannot at this time fully explain the substantive basis for TMCC's denials. TMCC obtained the Equifax and Experian reports of Mrs. Guimond. Further, TMCC obtained Mr. Guimond's Experian report. Defendant's theoretical discussion of credit reporting and FCRA security freezes aside, Plaintiffs have plausibly alleged that their application was denied for other reasons. *Carroll v. Exxon Co., U.S.A.*, 434 F. Supp. 557, 560 (E.D. La. 1977) (ECOA violated when creditor's sole reason provided was, "The credit bureau we contacted in your case did not respond adversely, but unfortunately it could furnish little or no definitive information regarding your established credit."). What was it about Mr. Guimond's Experian report that was insufficient? Or Mrs. Guimond's reports? TMCC does not even yet proffer such an explanation.

**2.     The Amended Complaint Plausibly Alleges that TMCC's Notice was not sufficiently Specific.**

As detailed *supra*, ECOA not only requires that a statement of reasons for an adverse action be technically truthful, but it must be specific and complete. The Amended Complaint plausibly alleges that TMCC's notice failed to meet this threshold. While the ECOA does not

11

expressly define the term "specific," the Courts are guided by its common meaning. *Stephens ex rel R.E. v. Astrue*, 565 F.3d 131, 137 (4th Cir. 2009). Courts customarily turn to dictionaries to determine whether a word has a plain or common meaning. *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430 (4th Cir. 2004); *Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen*, 152 F.3d 283, 289 (4th Cir. 1998). In this case, the term "specific" has a plain meaning. "To be specific" is to be "free from ambiguity,"[5] and "explicit, definite, precise and particular."[6] Application of this meaning of the word "specific" is focused on the necessary objectives of the ECOA notice provision – providing as much information as necessary for a consumer to understand why he or she was denied credit and then to act to correct, clarify or overcome any mistakes. *Fischl*, 708 F.2d at 148. The co-applicants in this case knew that TMCC had accessed their credit reports, including Mrs. Guimond's credit report from Equifax. The co-applicants knew that Equifax would permit manual access to Mr. Guimond's report. TMCC has not disputed this, but instead argued simply that providing any part of a particular fact and labeling it an "actual" reason is sufficiently "specific" under the ECOA and VECOA. Def.'s Mem. at 1, 7. The law requires that the "actual" and "principal" reasons be disclosed, but the law also recognizes that TMCC's "principal" and "actual" reason does not suffice if it lacks completeness and specificity. *Fischl*, 708 F.2d at 146; *Carroll*, 434 F. Supp. 557. In this case, the Amended Complaint also alleges that TMCC's proffered reason is not only incomplete, but it is a false reason.

If a consumer cannot learn the creditor's minimum standards for accepting credit, the consumer can neither "improve his credit application, correct any misinformation in his credit record, or guard against discrimination, thus thwarting both the protective and educational

---

[5] www.merriam-webster.com/dictionary/specific last visited on January 8, 2013.
[6] http://dictionary.reference.com/browse/specific last visited on January 8, 2013.

objectives of the ECOA." *Id*. Consequently, an incomplete or vague statement of the reasons for a credit denial will not allow a consumer to know how to meet the creditor's standards. *Fischl*, 708 F.2d at 148 (citing Taylor, *Meeting the Equal Opportunity Act's Specificity Requirement: Judgmental and Statistical Scoring Systems*, 29 Buffalo L.Rev. 73, 90 (1980); Reizenstein, *A Fresh Look at the ECOA*, 14 Akron L.Rev. 215 (1980); R. Clontz, *Equal Credit Opportunity Manual* at 5-24 (1983 Supp.).

As detailed in the Amended Complaint, TMCC's explanation for its decision omitted the fact that it was not general or full access to Mr. and Mrs. Guimond's reports that was "denied," but rather that it was a narrow and particular means of accessing one of the four reports TMCC requested that was the obstacle. This is a material omission. "The adverse action notice that Defendant mailed to the Plaintiffs was confusing because the Defendant had indeed accessed both Plaintiffs' credit reports." Am. Compl. ¶ 22. Certainly the Amended Complaint plausibly alleges facts to permit a factfinder to determine if this explanation provided as much information as necessary for a consumer to understand why they were denied credit and then to act to correct, clarify or overcome any mistakes. *Fischl*, 708 F.2d at 148. *See also Pettineo v. GE Money Bank*, 2011 WL 1163308 (E.D. Pa. Mar. 30, 2011) (considering and finding compliance with the ECOA notice provision using the comparable FDCPA "least sophisticated consumer" standard in the related FDCPA). In this case, Mr. Guimond had completed litigation with Equifax related to its furnishing of his inaccurate credit report. Am. Compl. ¶ 5. His credit report at Equifax was taken "offline," which meant that it "was not then available by automated means, but was nonetheless available when a manual request was made by a potential creditor (or other user)." Am. Compl. ¶ 5. Mrs. Guimond was not involved in such litigation, and her Equifax credit report remained available by either automated or manual means. Thereafter, believing that their

13

accurate credit reports would be used for legitimate purposes, the Guimonds jointly applied for a car loan. Am. Compl. ¶ 6. Defendant requested and received 3 different credit reports regarding the Plaintiffs, including reports on both Mr. and Mrs. Guimond. Am. Compl. ¶¶ 7-8.

Now, TMCC suggests that it may have based its decision on whether or not it had automated access to Mr. Guimond's Equifax report and thus its reason for denial may have been technically true. Def.'s Mem. at 10. But this misses the point. A reasonable jury could find that this explanation did not provide Mr. Guimond and Mrs. Guimond sufficiently specific information by which to know what had happened. Had TMCC done so, providing a statement such as, "We were unable to obtain the primary applicant's Equifax credit report through our automated system," this small amount of added information would have made all of the difference for the Guimonds. They could have contacted TMCC directly and determined what they could do to overcome this obstacle. They could have contacted Equifax to ask that the report be made available by automated means to TMCC. Mrs. Guimond could have applied as the primary applicant. In fact, TMCC makes this very point. Def.'s Mem. at 10, n.2.

TMCC also improperly seeks to substitute its own facts as to the extent of any restriction on Mr. Guimond's credit report for those actually alleged in the Amended Complaint. TMCC contends that under a general state law security freeze, a credit bureau may prevent all access to a consumer's credit file. But this is not what occurred in this case. In fact, Plaintiffs amended their complaint to remove the retaliation claim previously challenged in TMCC's first motion to dismiss. Instead, the Amended Complaint plainly and fully alleges that TMCC always had access to Mr. Guimond's Equifax credit report. All it had to do was to make a request other than through its automated system. Am Compl. ¶¶ 20, 22, 24.

**3. Alternatively, TMCC Failed to Provide a lawful Notice that the Guimonds' application was "Incomplete."**

TMCC devotes several pages within its memorandum to two irrelevant distractions. First, it offers a long historical explanation of the various consumer rights to a "security freeze." Def.'s Mem. at 3-4. It argues – maybe correctly – that if a creditor is unable to obtain a credit report because of a security freeze, "the third party may consider the application as incomplete." Def.'s Mem. at 3-4 citing Va. Code § 59.1-444.2(H). Defendant continues this point in argument, relying on the ECOA's threshold requirement that a consumer submit a "complete application" before the creditor need provide more detailed explanations for denial. Def.'s Mem. at 8, citing 12 C.F.R. § 202.2(f).

This position is fatal to TMCC's defense. First, TMCC's contention that the Guimonds' application was incomplete would require it to provide a specific notice of incompleteness, something it did not do. Second, TMCC treated the Guimond's application as complete.

The ECOA requires creditors to provide consumers with written notice that their applications were incomplete and instructions on how to cure deficiencies. (Regulation B, 12 C.F.R. §202.9(a)(1)(ii), §202.9(c)(1)(i) & (ii), §202.9(c)(2)). Specifically, with respect to

> (c) **Incomplete applications** –
> (1) Notice alternatives. Within 30 days after receiving an application that is incomplete regarding matters that an applicant can complete, the creditor shall notify the applicant either:
> (i) Of action taken, in accordance with paragraph (a) of this section; or
> (ii) Of the incompleteness, in accordance with paragraph (c)(2) of this section.
> (2) Notice of incompleteness. If additional in formation is needed from an applicant, the creditor shall send a written notice to the applicant specifying the information needed, designating a reasonable period of time for the applicant to provide the information, and informing the applicant that h failure to provide the information requested will result in no further considerations being given to the application. The creditor shall have no further obligation under this section if the applicant fails to respond within the designated time period. If the applicant

15

> supplies the requested information within the designated time period, the creditor shall take action on the application and notify the applicant in accordance with paragraph (a) of this section.

12 C.F.R. § 202.9(c)(1) & (2)(Paragraph (c)). Had TMCC complied with this regulation, the Guimonds would have been informed that Equifax had not permitted automated access to Mr. Guimond's report and given Mr. Guimond the opportunity to cause TMCC access to his report. TMCC will doubtless retreat from this position in reply – it must to survive. If it is TMCC's argument that the Guimond's application was incomplete, TMCC violated the ECOA and VECOA by failing to provide the notices spelled out in detail in Regulation B. There is authority, however, that holds that as soon as a creditor acts upon an application by denying credit and sending an adverse action notice, there is prima facie evidence that the application was a completed application because the creditor acted upon it. *Stoyanovich,* No. 06 Civ. 13158, 2007 WL 2363656, at *5 (quoting *Treadway,* 362 F.3d at 981, "[E]ven if it was not an application in the beginning, when [the creditor] declined [applicant's] request, it became an application and creditor was required to comply with [ECOA's notice provisions]."). Either way, TMCC has failed to demonstrate that it is entitled to dismissal based on this argument because the Amended Complaint adequately alleges TMCC did not comply with the adverse action notice provisions of the ECOA, including that the notice on its face fails to comply with the incomplete application notice.

**C. The Amended Complaint Alleges that TMCC never provided the Guimonds the additional disclosures required by 12 C.F.R. §202.9(b).**

The ECOA also requires that a creditor provide the consumer "that is substantially similar" to the following:

16

> The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is [name and address as specified by the appropriate agency listed in appendix A of this regulation].
> 15 C.F.R. §202.9(b).

The Amended Complaint alleges that Defendant failed to provide this notice to the Guimonds and the exhibit attached to the TMCC memorandum confirms its omission. Am. Compl. ¶16; Ex. A attached to Doc. 31. Still, as if already to summary judgment, TMCC attaches a witness declaration that claims that its standard form "template" would include such disclosures.[7] Defendant ignores the posture and burdens for the present motion, such a declaration is completely inappropriate at this stage of litigation. The Defendant doesn't even produce the actual notice it sent to the Guimonds, only its purported "template." The inappropriate proffered evidence is not only insufficient to overcome the allegations of the Amended Complaint, it demonstrates that at a minimum the competing versions of the notice present a dispute of fact that cannot be resolved on a motion to dismiss.

The Amended Complaint clearly alleges facts supporting all the elements of an ECOA and VECOA violation, which surpasses the plausibility standard, notwithstanding TMCC's attempt to insert contested evidence to dispute the Amended Complaint. Perhaps after discovery is completed and the undisputed facts are established, this issue may be revisited. But for now,

---

[7] TMCC does not ask, and the Court should not now convert this motion to one under Rule 56. To the extent the Court may find such a question to be appropriate under Rule 56, Plaintiffs identify the depositions of TMCC witnesses and an examination of its archive systems as information and evidence yet undiscovered and asks the Court to stay summary judgment pursuant to Fed. R. Civ. P. 56(d), and requests leave to file a supporting declaration upon a decision to convert this motion.

the court must construe the allegations in the Amended Complaint as true, and TMCC's inappropriate declaration and sample letter simply cannot meet the stringent standard to dismiss.

## CONCLUSION

For the reasons elucidated in this Opposition, the Plaintiffs respectfully request that the Defendant's Motion to Dismiss be denied in its entirety. If the court determines that the Complaint lacks particularity required over and above that required by Rule 8, the Plaintiffs move the court for leave to file an amended complaint.

Respectfully Submitted,

MARK F. GUIMOND and
KALLIE A. GUIMOND,
On their own behalf and behalf of all
others similarly situated

_____/s/_____
Leonard A. Bennett, VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
Telephone (757) 930-3660
Facsimile (757) 930-3662
E-mail:  lenbennett@clalegal.com

Susan M. Rotkis, VSB #40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd. Suite 1-A
Newport News, Virginia 23601
Telephone -  (757) 930-3660
Facsimile - (757) 930-3662
E-mail:  srotkis@clalegal.com

Thomas R. Breeden, VSB#33410
THOMAS R. BREEDEN, P.C.
10326 Lomond Drive
Manassas, Virginia 20109
Telephone: (703) 361-9277
Facsimile - (703) 257-2259
E-mail:  trb@tbreedenlaw.com

*Counsel for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of January 2013, a true copy of the foregoing is being filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Ryan Rosner
Sheppard Mullin Richter & Hampton LLP
1300 I Street NW
11th Floor
Washington, DC 20005-3314
Email: rrosner@sheppardmullin.com

Anna McLean
Sheppard Mullin Richter & Hampton LLP
4 Embarcadero Center
17th Floor
San Francisco, CA 94111
Email: amclean@sheppardmullin.com

Christopher Michael Loveland
Sheppard Mullin Richter & Hampton LLP
1300 I Street NW
11th Floor East
Washington, DC 20005-3314
Email: cloveland@sheppardmullin.com

Lai Lam Yip
Sheppard Mullin Richter & Hampton LLP
4 Embarcadero Center
17th Floor
San Francisco, CA 94111
(415) 774-3147
Fax: (415) 403-6221
Email: lyip@sheppardmullin.com

*Counsel for Defendants*

                        /s/
                        Susan M. Rotkis VSB 40693
                        CONSUMER LITIGATION ASSOCIATES, P.C.
                        763 J. Clyde Morris Boulevard, Suite 1-A
                        Newport News, Virginia 23601
                        Telephone (757) 930-3660
                        Facsimile (757) 930-3662
                        srotkis@clalegal.com

*Counsel for Plaintiffs*