**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

|  |  |
|---|---|
| **MARK F. GUIMOND and KALLIE A. GUIMOND, on behalf of themselves and others similarly situated,**<br><br>     **Plaintiffs,**<br><br>          **v.**<br><br>**TOYOTA MOTOR CREDIT CORPORATION,**<br><br>     **Defendant.** | **C.A. No. 3:12-cv-00606-JAG** |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED**
**TO PLAINTIFFS' ALLEGATION THAT THE STATED BASIS FOR**
**DENIAL OF THEIR CREDIT APPLICATION WAS FALSE**

Plaintiffs Mark F. Guimond and Kallie A. Guimond (collectively, "Plaintiffs") have

refused to produce documents directly related to one of the central allegations in this case;

namely, that defendant Toyota Motor Credit Corporation's ("TMCC") stated basis for denial of

their credit application was false.  Mr. Guimond's credit report allegedly had been "taken offline

or frozen" as a result of litigation with Equifax (Amended Complaint, ¶ 5; Dkt. No. 27);

accordingly, TMCC notified Plaintiffs that their credit application was denied on the basis

"access to credit report denied."  TMCC has requested documents it believes will show the

parameters of that "freeze," including correspondence with Equifax and the settlement agreement

Mr. Guimond entered into with Equifax (the "Equifax Documents").  These documents are

directly relevant to TMCC's defense that its stated basis for denial of the Plaintiffs' credit

application was true and accurate.  Accordingly, the Equifax Documents are reasonably

calculated to lead to the discovery of admissible evidence and should be produced.

In addition to challenging their relevance, Plaintiffs also object to producing the Equifax

Documents on the ground that they are protected by the attorney work product doctrine.

However, communications between counsel for Mr. Guimond—or Mr. Guimond himself, if self-

represented—and Equifax's counsel are not "documents prepared by an attorney in anticipation

of litigation."  The settlement agreement between Mr. Guimond and Equifax is likewise not

protected.  And even if these documents somehow could constitute attorney work product, the

fact that they were voluntarily disclosed to an adversary in litigation would waive the privilege.

Plaintiffs next contend that the Equifax Documents are subject to a "mediation privilege."

While documents "contained in the case files of a mediator or mediation program" are

confidential under Virginia Code, Plaintiffs' communications and settlement agreement in the

Equifax matter were not part of a formal mediation.  *See* Exhibit 4 hereto at p. 1.  Nor was a

mediator involved in the parties' settlement discussions and ultimate settlement agreement.  *Id*.

Accordingly, there is no factual or legal basis for Plaintiffs' assertion of a mediation privilege.

Finally, Plaintiffs cannot use either the attorney work product doctrine or the mediation

privilege as both a sword and a shield.  Plaintiffs contend the statement "access to credit report

denied" was inaccurate because, even though it was denied access electronically, TMCC

allegedly could have obtained Mr. Guimond's report from Equifax "manually."  Having placed

in issue the parameters of the freeze placed on Mr. Guimond's credit report, Plaintiffs cannot

refuse to produce the very documents that may refute their claims.

## BACKGROUND

Plaintiffs filed their two-count Amended Class Action Complaint ("Amended Complaint") on December 5, 2012. *See* Am. Compl. (Dkt. No. 27). The Amended Complaint alleges that, in January 2011, Plaintiffs jointly applied for credit from TMCC to finance the purchase of a vehicle. *Id*. at ¶ 6. Earlier, as a result of litigation against Equifax, Mr. Guimond's credit report allegedly had been "taken offline or frozen" by Equifax. *Id.* ¶ 5. Plaintiffs further allege that, on or about January 25, 2011, TMCC sent them an adverse action notice denying their credit application. *Id.* ¶¶ 9, 15. The notice disclosed the reason for denial as "access to credit report denied." *Id.* ¶ 9. According to plaintiffs, "access to credit report denied" allegedly was a false and inadequate statement of reasons for the adverse action, in violation of 15 U.S.C. § 1691(d) and Virginia Code § 6.2-503.

TMCC served Plaintiffs with its First Set of Requests for Production of Documents on December 11, 2012. *See* Exhibit 1 hereto. The document requests sought, among other things, documents relating to the litigation with Equifax that resulted in Mr. Guimond's credit report allegedly being "lawfully taken offline or frozen." Specifically, Requests 1 and 2 sought the following categories of documents:

> 1.      All documents relating to the lawsuit against Equifax alleged in paragraph 5 of the FAC.

> 2.      All documents relating to the allegation in paragraph 5 of the FAC that Mr. Guimond's credit report was "taken offline or frozen by Equifax."

*Id*. Plaintiffs served their objections to these document requests on December 21, 2012. *See* Exhibit 2 hereto. Plaintiffs objected to Requests 1 and 2 on the following grounds:

> (a) The documents requested are subject to the mediation privilege and the work product privilege. …

3

(b) Plaintiff also objects as the request seeks discovery of documents with no relevance to this case that could not plausibly lead to the discovery of relevant evidence in this case. …

(c) The settlement agreement with Equifax is negotiated as confidential. Plaintiffs' counsel has asked Equifax's counsel if it will waive such position and Equifax has refused.

*Id*.

During the meet and confer process, TMCC agreed to "modify the scope of document request 1 by limiting it to the following documents (1) all pleadings in the Equifax case; (2) all communications between counsel for the Guimonds and Equifax and its counsel relating to the allegations, prosecution and ultimate settlement of the Equifax case; and (3) the settlement agreement entered into by the parties in the Equifax case."[1]  *See* Exhibit 3 hereto at p. 5.  TMCC further explained as follows why these documents are relevant:

> [W]e are entitled to documents relating to the parameters of the credit freeze. That includes, among other things, any instructions given to Equifax in the event of a credit inquiry.  As alleged in the amended complaint, "as a result" of the lawsuit against Equifax, Mr. Guimond's credit report was frozen.  You have alleged that TMCC either could have or did obtain Mr. Guimond's credit report anyway.  There is a direct link between the terms of the settlement of that case and the allegations against TMCC.
>
> Plaintiffs' ECOA and VECOA claims both allege that the stated reason for TMCC's denial of credit was false.  We are entitled to discovery showing that it is accurate, which includes the parameters of the credit freeze set forth in the settlement agreement and related communications with Equifax and its counsel in that litigation.

*See* Exhibit 4 at pp. 4-5.  Despite the good faith efforts of counsel for the parties to resolve the discovery matters at issue, counsel for the parties were unable to resolve this discovery dispute.

---

[1]     Plaintiffs agreed to produce the Equifax pleadings.  *See* Exhibit 3 at p. 5.

**ARGUMENT**

I.   **DOCUMENTS RELATING TO PLAINTIFF MARK GUIMOND'S LAWSUIT AND SETTLEMENT WITH EQUIFAX ARE REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE.**

Although Plaintiffs have alleged the reason TMCC gave for the denial of their credit application—"access to credit report denied"—was somehow "false," they now object to producing the very documents that would establish their truth. Plaintiffs allege under the Equal Credit Opportunity Act and the Virginia Equal Credit Opportunity Act that TMCC "fail[ed] to provide a notice containing an … accurate statement of specific reasons for taking adverse action" in denying their credit application. *See* Am. Compl. ¶ 35; *see also* Am. Compl. ¶ 38 (including substantially identical allegation). Plaintiffs further allege that TMCC's "ECOA notice violates § 202.9(b) because it states obvious falsehoods … that the reason to deny was because 'Access to credit report denied,' which is false because access to the applicants' credit reports was not denied." *Id*. at ¶ 17. Plaintiffs concede Mr. Guimond's credit report was not available by "automated means," but nevertheless contend that it "was nonetheless available when a manual request was made by a potential creditor (or other user)." *Id.* at ¶ 5.

Although TMCC believes—and has filed a motion to dismiss on the basis that—its statement "access to credit report denied" was legally sufficient whether or not access might have been available by some means other than electronically, it is entitled to test Plaintiffs' claim that it would have been granted access to Plaintiff's credit report by *any* means. The terms of the Equifax settlement agreement and any negotiations surrounding that agreement are directly relevant to that central allegation.

The following three specific categories of documents are at issue:

- All documents relating to the allegation in paragraph 5 of the Amended Complaint that Mr. Guimond's credit report was "taken offline or frozen by Equifax."

- All communications between counsel for the Guimonds and Equifax and its counsel relating to the allegations, prosecution and ultimate settlement of the Equifax case; and

- The settlement agreement entered into by the parties in the Equifax case.

First, documents relating to the allegation that Mr. Guimond's credit report was "taken offline or frozen by Equifax" may include information regarding the parameters of that "freeze," including whether Mr. Guimond's credit report would be permitted to be accessed by potential creditors at all, and if so, how. Communications with Equifax and its counsel also likely reflect such information. Similarly, the settlement agreement itself likely reflects the parameters of the credit freeze and how it would be implemented.

Each of the requested categories of documents goes to the heart of one of the central issues in this case; namely, whether the reason stated by TMCC for the denial of Plaintiff's credit application—"access to credit report denied"—was accurate. Accordingly, Plaintiffs' relevance objection is without merit, and the requested Equifax Documents should be produced.

## II.    THE EQUIFAX DOCUMENTS ARE NOT PROTECTED FROM DISCOVERY BY EITHER THE WORK PRODUCT DOCTRINE OR ANY MEDIATION PRIVILEGE.

Plaintiffs also object to producing the Equifax Documents on the grounds that they somehow are protected by the attorney work product doctrine and an unspecified "mediation privilege." Neither objection has any merit.

**A.    The Work Product Doctrine Does Not Apply To The Requested Communications And Settlement Agreement With Equifax.**

First, the documents requested by TMCC relating to the Equifax litigation and settlement are not subject to the attorney work product doctrine.  "[T]he work product doctrine belongs to the attorney and confers a qualified privilege on documents prepared by an attorney in anticipation of litigation."  *Solis v. Food Emplrs. Labor Relations Ass'n*, 644 F.3d 221, 231 (4th Cir. 2011) (citations omitted).  "As in the case of attorney-client privilege, the party claiming the protection bears the burden of demonstrating the applicability of the work product doctrine."  *Id.* at 232 (citation omitted).

Plaintiffs cannot meet their burden of demonstrating that communications with an adversary and a settlement agreement entered into with an adversary constitute attorney work product.  The communications between counsel for Mr. Guimond and counsel for Equifax do not constitute "documents prepared by an attorney in anticipation of litigation."[2]  Nor does the settlement agreement constitute such work product.  The work product doctrine is simply not applicable to litigation communications and/or settlement agreements.

Second, even assuming that the Equifax Documents could somehow constitute attorney work product, the very fact that there was a voluntary disclosure of those communications and settlement agreement to an adversary would waive the privilege.  *Sheets v. Ins. Co. of N. Am.*, No. 4:04CV00058, 2005 U.S. Dist. LEXIS 27060, *6 (W.D. Va. Nov. 8, 2005) ("The Fourth Circuit has clearly held that for a waiver [of work product] to occur, the disclosure must be made

---

[2]    At one point in the meet-and-confer process, counsel took the position that Mr. Guimond represented himself in the Equifax litigation and that the documents were protected by the work product doctrine even though Mr. Guimond is not an attorney. *See* Exhibit 3 at p. 5.  Plaintiffs have backed off that position, and now apparently contend that Mr. Guimond was indeed represented by an attorney. *See* Exhibit 5 at p. 1.  In either case, documents shared with an adversary are not protected by any work product doctrine.

freely and with the knowledge that document is being passed to a party with adverse interests.")
(citation omitted); *see also United States v. MIT*, 129 F.3d 681, 687 (1st Cir. 1997) ("The
prevailing rule (is) that disclosure to an adversary, real or potential, forfeits work-product
protection"). Accordingly, to the extent the attorney work product doctrine ever applied to the
Equifax Documents—and it did not—the privilege was voluntarily waived when they were
disclosed to an opposing party.

Finally, even assuming *arguendo* that the Equifax Documents—which were not prepared
in anticipation of litigation and were voluntarily disclosed to a third party—could somehow still
constitute protectable attorney work product, they should nevertheless be produced. The work
product doctrine is not an absolute privilege. Where, "a party shows that it has substantial need
for the materials to prepare its case and cannot, without undue hardship, obtain their substantial
equivalent by other means," the documents "may be discovered." *See* FED. R. CIV. P.
26(b)(3)(A). Here, Plaintiffs have put the contents of the Equifax Documents directly in issue by
contending TMCC violated the law when it attempted to obtain Mr. Guimond's credit report and
notified Mr. Guimond that access had been denied. Mr. Guimond contends that this notification
was incorrect because TMCC supposedly could have obtained such access. Because TMCC has
a substantial need for the Equifax Documents to defend against Plaintiffs' core allegation of
illegality, they should be produced.

> **B.   Plaintiff's Assertion Of An Unspecified "Mediation Privilege" Does Not Bar
> The Requested Discovery.**

Plaintiffs also object to producing the Equifax Documents on the ground that the Equifax
Documents are subject to a "mediation privilege." This objection is without merit. As the
proponent of the "mediation privilege," the burden is on Plaintiffs to establish that the
"privilege" exists and applies. *See, e.g., Solis*, 644 F.3d at 233 (party claiming privilege bears

burden of demonstrating privilege's applicability). The Fourth Circuit has declined to recognize a general "mediation privilege." *See In re Anonymous*, 283 F.3d 627, 639 n.16 (4th Cir. 2002) (declining to adopt and apply a mediation privilege). While there is a Virginia statute, Va. Code. Ann. § 8.01-581.22, that extends confidentiality to "[a]ll memoranda, work products and other materials contained in the case files of a mediator or mediation program ..." and "[a]ny communication made in or in connection with the mediation ....," Plaintiffs concede that the Equifax case did not involve a mediator or a mediation program.

For the Virginia mediation confidentiality statute to apply, the settlement communications and settlement agreement necessarily must arise out of a formal mediation with a mediator "selected by agreement of the parties." *See* Va. Code Ann. § 8.01-581.21; *see also Anderson v. Anderson*, 29 Va. App. 673, 514 S.E.2d 369 (1999) (declining to extend confidentiality of Va. Code. Ann. § 8.01-581.22 to custody agreement that was facilitated by a licensed clinical psychologist). Here, Plaintiffs have conceded that no mediation occurred and that, indeed, there was no involvement of a mediator in connection with the settlement of the Equifax case. *See* Exhibit 4 at p. 1 ("there was not a formal mediator"). Accordingly, Plaintiffs' assertion of a mediation privilege is without merit and does not bar production of the documents.

**C.      Even If The Work Product Doctrine Or Mediation Privilege Somehow Were Applicable, Plaintiffs Cannot Use These Privileges As A Sword And A Shield.**

Plaintiffs are improperly asserting privilege as both a sword and a shield. The Amended Complaint expressly alleges that (1) Equifax froze Mr. Guimond's credit report as a result of litigation he filed against it; (2) although the report was frozen, Equifax allegedly "sent a message that [TMCC] could access his report by manually contacting and telephoning Equifax;" and (3) TMCC's stated reason for the denial of credit was false and inadequate as a result. Despite these allegations, Plaintiffs have objected to producing discovery on these issues.

Documents relating to the Equifax litigation and settlement include the parameters of the credit freeze allegedly placed on Mr. Guimond's credit report.  Although TMCC believes that, as a legal matter, its denial of credit on the basis "access to credit report denied" is sufficient even if there had been some way around the denial of access electronically, if TMCC is nonetheless required to establish that no access would have been permitted "manually" either, it must have access to these documents.  Plaintiffs should not be permitted to hide behind the work product doctrine and any "mediation privilege" to preclude discovery that will refute their allegations. *See Charlotte Motor Speedway, Inc. v. Int'l Ins. Co*., 125 F.R.D. 127, 131 (M.D.N.C. 1989) ("the activities of the counsel employed by New CMS in the underlying action are directly in issue here for they are the only means of discovering whether New CMS met its obligations under the insurance contract and reached its settlement agreement in good faith.  The settlement materials are therefore critical to International's defense."); *Truck Ins. Exchange v. St. Paul Fire and Marine Ins. Co*., 66 F.R.D. 129 (E.D. Pa. 1975) ("the materials in Mr. Bogdanoff's file are sought here because they are at issue in this action before the Court. The activities of counsel in the underlying lawsuit are the basis of St. Paul's defense in this case. … The work product doctrine of *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947) does not provide a privilege or an immunity to Mr. Bogdanoff in the situation now before the Court.") (citation omitted).  Accordingly, production of these documents should be compelled.

## II.   ANY CONFIDENTIALITY CONCERNS ARE ADDRESSED BY THE PROTECTIVE ORDER IN THIS CASE.

Plaintiffs also object to producing the Equifax Documents because "[t]he settlement agreement with Equifax is negotiated as confidential."  *See* Exhibit 2.  Here, however, the Court already has entered the parties' Stipulated Protective Order.  *See* Dkt. No. 22.  Accordingly, there

already is a procedure in place to maintain the confidentiality of the Equifax Documents, which entirely addresses Plaintiffs' concerns.

## CONCLUSION

For the reasons set forth above, TMCC respectfully requests that the Court compel Plaintiffs to produce (1) all communications between counsel for the Guimonds and Equifax and its counsel relating to the allegations, prosecution and ultimate settlement of the Equifax case; (2) the settlement agreement entered into by the parties in the Equifax case; and (3) all documents relating to the allegation in paragraph 5 of the FAC that Mr. Guimond's credit report was "taken offline or frozen by Equifax."

<div style="margin-left:50%">

Respectfully submitted:

    /s/ *Ryan Jennifer Rosner*
Ryan Jennifer Rosner, VSB No. 82586
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
1300 I Street, N.W., 11th Floor East
Washington, D.C. 20005-3314
Tel. (202) 469-4939
Fax (202) 218-0020
rrosner@sheppardmullin.com

*Counsel for Defendant*
*Toyota Motor Credit Corporation*

</div>

Dated: January 10, 2012

OF COUNSEL:

Christopher Loveland, admitted *pro hac vice*
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
1300 I Street, N.W., 11th Floor East
Washington, D.C. 20005-3314
Telephone (202) 469-4939
Facsimile (202) 218-0020
cloveland@sheppardmullin.com

Anna S. McLean, admitted *pro hac vice*
Lai L. Yip, admitted *pro hac vice*
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone (415) 434-9100
Facsimile (415) 434-3947
amclean@sheppardmullin.com
lyip@sheppardmullin.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of January, 2013, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will then send a notification of such

filing (NEF) to the following:

Leonard Anthony Bennett
Consumer Litigation Associates
763 J Clyde Morris Boulevard
Suite 1 A
Newport News, VA 23601
Phone: 757-930-3660
Fax: 757-930-3662
Email: lenbennett@cox.net

Thomas Ray Breeden
Thomas R. Breeden PC
10326 Lomond Drive
Manassas, VA 20109
Phone: 703-361-9277
Fax: 703-257-2259
Email: trb@tbreedenlaw.com

Susan Mary Rotkis
Consumer Litigation Associates
763 J Clyde Morris Boulevard
Suite 1 A
Newport News, VA 23601
Phone: 757-930-3660
Fax: 757-930-3662
Email: srotkis@clalegal.com

*Counsel for Plaintiffs*
*Mark F. Guimond and Kallie A. Guimond*

                              /s/ *Ryan Jennifer Rosner*
                          Ryan Jennifer Rosner, VSB No. 82586